SMITH (CHASE v.). See Case No. 2,629.

## Case No. 13,024.
### SMITH v. CHESAPEAKE & O. CANAL CO.

[5 Cranch, C. C. 563.] [1]

Circuit Court, District of Columbia. Oct. Term, 1839. [2]

EQUITY—SUIT TO ENFORCE JUDGMENT—MISTAKE.

A court of equity will not lend its aid to enforce a judgment at law obtained upon a prize ticket in a lottery drawn by mistake in a place not authorized by law.

This was a bill in equity [by Joseph Smith against the Chesapeake & Ohio Canal Company], claiming an annual dividend upon an unsubscribed claim against the old Potomac Company, according to the provisions of the second section of the charter of the Chesapeake and Ohio Canal Company, granted, by Virginia, on the 27th of January, 1824. The bill after stating the origin and surrender of the charter of the old Potomac Company, and the acts granting a charter to the Chesapeake and Ohio Canal Company, avers that the plaintiff is a creditor of the old Potomac Company upon a judgment of this court, obtained by the state of Maryland for the complainant's use at April term, 1820, for $12,750, with interest from the 20th of June, 1818, till paid, and $21.61 costs. That, by the second section of the charter of the Chesapeake and Ohio Canal Company, the subscriptions might be paid in the claims of the creditors of the Potomac Company certified by the acting president and directors to have been due for principal and interest, on the day on which the assent of the said company shall have been signified, by their corporate act, to the new charter of the Chesapeake and Ohio Canal Company as provided for in the first section of the charter of the 27th of January, 1824; provided that the amount of claims, thus to be subscribed,

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 14 Pet. (39 U. S.) 45.]

should not exceed $175,800; and provided that the new stock, thus paid for, should be entitled to dividend, only as thereinafter provided, (that is, after the cash-stockholders should have received ten per cent. upon the amount of cash paid upon their subscriptions. See section 11.) That by the twelfth section it is enacted, "that it shall be the duty of the president and directors of the Chesapeake and Ohio Canal Company, so long as there shall be and remain any creditor of the Potomac Company who shall not have vested his demand against the same in the stock of the Chesapeake and Ohio Canal Company, to pay to such creditor or creditors, annually, such dividend or proportion of the net amount of the revenues of the Potomac Company, on an average of the last five years preceding the organization of the said proposed company, as the demand of the said creditor or creditors, at this time, may bear to the whole debt of one hundred and seventy-five thousand eight hundred dollars."

The bill further states that the revenues of the Potomac Company, for the last five years preceding the organization of the Chesapeake and Ohio Canal Company, amounted to very large sums of money, but the precise amount, the plaintiff has been unable to ascertain. That the claim on which the judgment was rendered was assigned to the plaintiff for value received by one ——; and that before he purchased it he inquired of the president and many of the directors of the Potomac Company whether the claim was a fair and valid claim, and would be paid; to which inquiries he was answered by them in the affirmative: and that under the assurance, so given, he was induced to make the said purchase, and receive the said assignment. That on the 6th of December, 1824, he assigned to one George Luckley, for a full and valuable consideration, four thousand dollars, part of the said judgment, with interest thereon from the 24th of December, 1823, till paid. That on the 24th of December, 1827, the plaintiff presented a copy of the judgment to the secretary of the Potomac Company, to be certified to the Chesapeake and Ohio Canal Company, and were informed, by the secretary, that a copy of the judgment had already been filed and entered upon the proceedings of the said company with an assignment of part thereof, as aforesaid, to the said George Luckley. That on the 11th of August, 1828, the plaintiff made a written tender of the said judgment to the treasurer of the Potomac Company, with a request in writing that it should be certified to the said Chesapeake and Ohio Canal Company under the provisions of their charter; and that if such certificate should be refused, his application, and the refusal of the certificate should be entered on the minutes of the Potomac Company. That the certificate was refused and that the plaintiff does not know what proceedings were had, by the board of directors of that company, on his

said application. That he has been informed and believes that Luckley was permitted to subscribe his interest in the said judgment, under the plaintiff's assignment, to the stock of the Chesapeake and Ohio Canal Company. That the plaintiff had made frequent applications to the board of directors of that company for his dividend on that part of his said judgment which remained unassigned, and for which he has received no payment nor satisfaction according to the provisions of the twelfth section of the act of the 27th of January, 1824, and that the board have not only refused to pay him any dividend, but deny all liability for it. That the plaintiff has not the means of knowing the amount of the dividend to which he is entitled without access to the books and papers of the Potomac Company, now in the hands of the board of directors of the Chesapeake and Ohio Canal Company, and without an account to be taken of the average revenues of the Potomac Company for the last five years preceding the organization of the Chesapeake and Ohio Canal Company; that he has not the means of taking such an account, but they are in the power of that company, who refuse the plaintiff access thereto, &c., and he prays that that company may be made defendant, and may answer, &c.; and that an account may be taken to ascertain the dividend to which the plaintiff is entitled upon his judgment, and that the defendant may be decreed to pay the same; and for general relief.

The answer of the Chesapeake and Ohio Canal Company, admits all the acts of incorporation of the two companies, &c. Denies that, in making the estimate of the debts due by the Potomac Company, amounting to $175,800, the plaintiff's claim was included; and affirms that the claims against that company, certified by its president and directors according to the direction of the act, amounted to $175,325.76¾, in which no claim arising from the lottery was included. It states that the lottery "out of which the claim of the complainant arises," was unlawfully drawn in the District of Columbia instead of Maryland, although erroneously and in good faith. That this court decided, in an action brought for the price of tickets sold, that the lottery was void, and that no suit could be maintained for the price of the tickets, or for prizes. It denies that the judgment was assigned to the plaintiff "for value;" or that before he purchased it he inquired of the president and directors of the Potomac Company, or was by them informed, that the claim was a fair or valid claim, &c. It avers that the judgment was given under ignorance "on all sides" of the rights of the parties; that although Luckley was permitted, by the commissioners, to subscribe the amount of a claim, &c., the nature of the claim was not understood or investigated, &c. This answer was not upon oath, nor under the corporate seal, but no excep-

tion was taken to it; and the cause was set for hearing upon the bill, answer, general replication, and the affidavit of S. B. Harper, and the deeds from Smith to Harper, admitted in evidence by consent, and showing that the plaintiff purchased the ticket which had drawn a prize of $15,000 for $13,000, paid in land, houses, and goods, of that value; which prize was the cause of action upon which the judgment was rendered against the Potomac Company in favor of the state of Maryland, for the use of this complainant, upon which the present claim is founded. The case was then referred to a master commissioner to ascertain and report the average net annual revenue of the Potomac Company for the last five years, &c., which he found to be $5,984.06, and the amount of the plaintiff's claim upon the judgment, including the $4,000 assigned to Luckley, to be $17,057.73; so that the plaintiff's annual dividend of the revenues of the Potomac Company would bear the same proportion to his claim as the whole revenues bear to the whole debts of that company, (namely, $175,800,) if he is entitled to any thing.

Upon the coming in of the report, and on final hearing, THE COURT (CRANCH, Chief Judge, contra) dismissed the bill with costs, upon the ground, as it is understood, that the drawing of the lottery in Washington, D. C., was illegal, as being contrary to the Maryland act of November, 1792 (chapter 58), which was continued in force in this county by the act of congress of the 27th February, 1801 (2 Stat. 103), and which declares it to be unlawful, without the permission of the legislature of the state, to propose to the public any scheme of a lottery to be drawn within the state, under the penalty of £500 current money for every offence, to be recovered by indictment. This court, in the case of Hawkins v. Cox [Case No. 6,243], at June term, 1819, decided that that act of Maryland was in force in this county, considering the county as standing in the place of the state; and intimated the same opinion in the case of Thompson v. Milligan [Id. 13,969], at June term, 1820, which was an action brought upon a note given for tickets in the second class of the Potomac and Shenandoah lottery, granted to the Potomac Company by the legislature of Maryland in the year 1809; upon which intimation, Mr. Key, for the plaintiff, became non-pros. See Holman v. Johnson, Cowp. 343, and 2 Comst. Cont. 239.

CRANCH, Chief Judge. 1st. The first question is, whether the illegality of the drawing of the lottery in the District of Columbia, instead of Maryland, is a defence in equity to the judgment at law, it being admitted that it was so done erroneously, but in good faith. 2d. Whether a claim against the Potomac Company, not included in the estimate of $175,800, mentioned in the second section of the act of the 27th of Jan-

uary, 1824, is entitled to a dividend under the twelfth section of that act, although the sum of $175,800 of claims should have been subscribed as stock in the new company. It is a rule in equity, that the court of equity will not aid a plaintiff in the recovery of a legal claim, contrary to conscience; that is, if the plaintiff ought not, in good conscience, to insist upon his legal right.

Whether the error, of drawing the lottery in the District of Columbia, instead of drawing it in Maryland, as stated in the answer, is sufficient to deprive the plaintiff of his equitable right to enforce his judgment, I doubt. (1) Because the answer admits that it was done by mistake, and in ignorance of the law against it, and in good faith by all the parties. There is nothing in it to affect the plaintiff's conscience. (2) Because the Potomac Company must be presumed to have sold the tickets and received the money before the lottery was drawn; and it would be against conscience in them, after receiving the fund out of which the prizes were to be paid, to refuse to pay them, upon the plea that they themselves, who had induced the ticket-holder to venture his money, had drawn the lottery in an unlawful place. It is presumed that the case alluded to in the answer was that of Thompson v. Milligan [supra], at June term, 1820; but the judgment under which the plaintiff claims, was rendered at the April term preceding. It does not appear that in the case of Thompson v. Milligan, this court decided any thing. Mr. Jones, for the defendant, in that case, took the ground that the note, which was for $2,422.50, the price of sundry tickets in the lottery, was given for an illegal consideration, as being contrary to the act of Maryland, 1792 (chapter 58), this court having, at June term, 1819, in the case of Hawkins v. Cox and Smith [supra], decided that that act of Maryland was adopted by the act of congress as the law in the county of Washington. Milligan's note having been given in that county, was supposed to have been given for an unlawful consideration, and Mr. Key, for the plaintiff, suffered a non-pros., but it has not yet been judicially decided that the Potomac Company was not liable for the prizes drawn in that lottery. (3) I do not think that the claims against the Potomac Company provided for by the twelfth section of the charter of the Chesapeake and Ohio Canal Company, are limited to $175,800. That is the limit of the stock of the new company, which should be paid for by claims of the creditors of the Potomac Company, certified by the president and directors of that company; but the twelfth section provides for all the creditors of that company who shall not have invested their demands against the same in stock of the new company, and does not require that those demands should be certified by the president and directors of the Potomac Company.

If, therefore, the plaintiff had a valid claim against the Potomac Company on the 27th of January, 1824, he has a right annually to his proportion of the net amount of the revenues of that company, on an average of the last five years preceding the organization of the Chesapeake and Ohio Canal Company. For these reasons I do not concur in the decree of the court, dismissing the bill.

Decree affirmed by the supreme court, at January term, 1840. 14 Pet. [39 U. S.] 45.